UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DIXIE ELECTRIC                                               CIVIL ACTION
MEMBERSHIP CORPORATION

VERSUS                                                       NO. 13-435-SDD-RLB

COX COMMUNICATIONS
LOUISIANA, LLC

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to <u>file</u> written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 14, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DIXIE ELECTRIC<br>MEMBERSHIP CORPORATION | CIVIL ACTION |
| VERSUS | NO. 13-435-SDD-RLB |
| COX COMMUNICATIONS<br>LOUISIANA, LLC | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on the Defendant's Motion to Dismiss or, In the Alternative, Motion for Stay. (R. Doc. 5). The Defendant argues that the court lacks subject matter jurisdiction because a Louisiana agency, the Louisiana Public Service Commission ("LPSC" or "Commission"), has exclusive jurisdiction over this action. In the alternative, the Defendant argues that the court should dismiss or stay this action under the doctrine of primary jurisdiction until the LPSC has resolved regulatory issues the Defendant raised before the LPSC prior to this lawsuit. In the further alternative, the Defendant seeks dismissal of the action for failure to state a claim. The Plaintiff opposes the motion. (R. Doc. 16).[1]

**I.    Procedural History**

    **A.    The State Court Proceeding**

On June 6, 2013, the Dixie Electric Membership Corporation ("DEMCO" or "Plaintiff") filed a Petition for Damages in the 21st Judicial District Court, Parish of Livingston, Louisiana against Cox Communications Louisiana, LLC ("Cox" or "Defendant"). (R. Doc. 1-1 at 1-9, "Petition"). According to the Petition, DEMCO is a non-profit Louisiana electric cooperative

---

[1] The Defendant filed a reply memorandum. (R. Doc. 21). The Plaintiff filed a surreply memorandum. (R. Doc. 24).

1

that purchases electric power from third parties and distributes the power across electric power lines to over 100,000 members. (Petition, ¶¶ 3-4). On or about September 1, 1996, DEMCO and Cox, a cable television provider, entered into a contract titled "General Agreement Joint Use of Wood Poles" (the "Contract") providing that Cox could attach its lines and cables to DEMCO's wood utility poles to serve its customers. (Petition, ¶ 5). DEMCO attached a copy of the Contract as Exhibit 1 to the Petition. (R. Doc 1-1 at 10-32). In the Petition, DEMCO alleges that Cox has breached several of its duties under the Contract.

First, DEMCO demands back rent and penalties for allegedly unreported and unauthorized pole attachments by Cox. DEMCO alleges that it decided to undertake a joint pole inventory survey in 2010, provided Cox notice of the survey, and invited Cox to participate in the survey. (Petition, ¶ 15). DEMCO alleges it completed the survey in the first quarter of 2011. (Petition, ¶ 16). DEMCO alleges that in the survey it determined that Cox attached its cables to 7,537 more poles than it had reported to DEMCO. (Petition, ¶ 18). DEMCO alleges that it notified Cox of these purported attachments and that Cox failed to submit pole attachment applications within fifteen days of the notification, as required under Section 11(a) of the Contract. (Petition, ¶¶ 13, 19). DEMCO alleges that this resulted in a breach of the contract authorizing DEMCO to recover back rent for each pole at the contractual rate of $10 plus interest at a contractual rate of 10% from the date of installation. (Petition, ¶ 21). DEMCO further alleges that it is COX's duty under Section 19(d) of the Contract to prove the date of installation of these unauthorized attachments. (Petition, ¶ 22). In the absence of such proof, DEMCO claims that it is entitled to back rent plus interest from the date of the Contract's formation on September 1, 1996, totaling $2,792,781.27. (Petition, ¶ 22). DEMCO further claims it is entitled

to recover a $25 annual fee for each alleged unauthorized attachment from 2011 until Cox submits written applications and DEMCO approves the attachments. (Petition, ¶ 23).

Second, DEMCO claims that Section 7 of the Contract provides it the option of requiring Cox to furnish and maintain a bond with a corporate security acceptable to DEMCO in the amount of $15,000.00 or twenty dollars ($20.00) per pole contacted by Cox, whichever is greater. (Petition, ¶ 25). It is not disputed that Cox has furnished DEMCO with $15,000.00 in bond. DEMCO alleges that Cox has attached cables to at least 34,093 of DEMCO's poles, which obligates Cox to furnish a total bond of $681,860.00. (Petition, ¶ 26).

Third, DEMCO seeks to recover DEMCO's "proportionate" share of the costs of its right-of-way maintenance, including tree trimming and cutting. (Petition, ¶ 28). DEMCO alleges that this duty is required by Section 5(d) and Section 3(e) of the Contract. (Petition, ¶ 28). DEMCO alleges that it has incurred over $10 Million in maintenance costs related to areas in which Cox has made attachments to DEMCO's poles and, accordingly, seeks to recover $895,928.10 as Cox's proportionate share of these costs. (Petition, ¶¶ 29-30).

Fourth, DEMCO also alleges that Cox has not complied with certain safety specifications, rules, and regulations as required by Section 2 of the Contract. (Petition, ¶ 31). DEMCO alleges that under Section 5(e) of the Contract, if Cox fails to comply with these safety specifications, rules, and regulations, then DEMCO has the right to perform the work and seek reimbursement from Cox. (Petition, ¶ 32). DEMCO also alleges that the safety inspection remains in progress, but that it has incurred, as of the date of the filing of the Petition, "costs of $117,114.12 associated with the inspection, identification and correction of Cox's safety violations." (Petition, ¶ 35).

Finally, DEMCO alleges that Section 10 of the Contract allows it to recover attorney's fees, courts costs, and other litigation costs incurred by DEMCO in enforcing its rights under the Contract. (Petition, ¶ 36).

On July 3, 2013, Cox removed the state court action on the basis that the court has subject matter jurisdiction under 28 U.S.C. § 1332(a). (R. Doc. 1). Cox alleges that the parties are diverse because DEMCO is a non-profit Louisiana electric cooperative domiciled in the State of Louisiana[2] and Cox is wholly owned by (i.e., the sole member of) Cox Communications LLC Management Inc., which is incorporated in Delaware with its principal place of business in Georgia. (R. Doc. 1 at 3). Furthermore, Cox asserts that it is facially apparent that the amount in controversy requirement has been satisfied. (R. Doc. 1 at 3-4). DEMCO has not contested Cox's assertions that there is complete diversity or that the amount in controversy requirement has been exceeded.

B.   **The Louisiana Public Service Commission Proceeding**

On April 11, 2012, over a year before DEMCO initiated this action in state court, Cox filed a Complaint before the LPSC regarding many of the same issues involved in this action. (R. Doc. 6-1).[3] Cox's LPSC Complaint challenges (1) the validity and reasonableness of DEMCO's pole inventory, (2) the lawfulness of DEMCO's attempt to collect back pay and

---

[2] Cox's assertion of DEMCO's citizenship for the purpose of diversity jurisdiction appears insufficient. A party invoking diversity jurisdiction must allege both the state of incorporation and principal place of business of each corporate party. *See* 28 U.S.C. § 1332(c)(1); *Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 706 F.2d 633, 637 (5th Cir. 1983); *see also Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("We have stated repeatedly that when jurisdiction depends on citizenship, citizenship must be distinctly and affirmatively alleged."). The court notes that in another diversity action filed in this court, a party alleged that DEMCO "is a Louisiana corporation with its principal place of business in Louisiana." *See Pike Electric, LLC v. DEMCO*, No. 12-652, (M.D. La.), ECF No. 1. Should Cox's instant Motion be denied, then Cox must amend its Notice of Removal and allege the state of incorporation and principal place of business of DEMCO.

[3] LPSC Docket No. U-32285, *Cox Commc'ns, LLC v. Dixie Elec. Membership Corp.*, *In re: Complaint for Violations of LPSC General Orders and Law*, Pole Attachment Complaint with Requests for Declaratory Relief and Injunctive Relief (April 11, 2012).

penalties, (3) the validity and reasonableness of DEMCO's safety inspection, and (4) the alleged increase in Cox's rent for each pole attachment (from $10 in 2009 to a planned $15 in 2013) as a violation of a "Rate Freeze Order" (R. Doc. 6-5)[4] issued by the LPSC.  Cox's LPSC Complaint seeks an order declaring the following:

1. DEMCO's attachment count is unreasonable and inaccurate, and cannot be used to calculate billing for past or future rents;

2. DEMCO cannot bill Cox for the cost of the attachment count;

3. DEMCO is not authorized under the parties' pole attachment agreement to bill Cox penalties or back rent for unauthorized attachments;

4. DEMCO must include Cox in the planning and implementation of any safety audit and any safety compliance work going forward;

5. DEMCO cannot bill Cox for work fixing alleged safety violations until DEMCO conducts a safety audit in a manner consistent with the parties' Agreement;

6. DEMCO has no authority under the parties' Agreement to bill Cox for a safety audit;

7. DEMCO's attempt to charge more than $10 per pole for rent is unlawful;[5]

8. Enjoining DEMCO from engaging in the conduct and practices described above now and in the future; and

9. Awarding Cox all additional relief that the Commission deems just and proper, including, as applicable, its costs and attorneys' fees.

(R. Doc. 6-1 at 22-23).  Cox also alleges that the LPSC has subject-matter jurisdiction over its Complaint based upon the LPSC's "authority to regulate the rates, terms, and conditions of pole attachments and attachment agreements."  (R. Doc. 6-1 at 5).

On April 12, 2013, DEMCO filed an Exception for Lack of Subject Matter in the LPSC action arguing that Cox's Complaint required interpretation of a pre-existing contract, over

---

[4] LPSC General Order (Docket No. U-22833), *Review of LPSC Orders U-14325, U-14325-A and General Order dated December 17, 1984 dealing with agreements for Joint Utilization of Poles and Facilities by Two or More Entities* (March 12, 1999) [hereinafter, "Rate Freeze Order"].
[5] DEMCO subsequently agreed to withdraw any attempt to increase the $10 pole attachment rate unless and until the LPSC issues an Order regarding pole attachment rates.  (R. Doc. 16-3).

5

which the courts have exclusive jurisdiction. (R. Doc. 16-2).[6] Cox and the LPSC Staff opposed the exception. (R. Docs. 6-2, 6-3).[7] On August 2, 2013, approximately two months after DEMCO filed the instant action in state court, the LPSC issued a ruling denying DEMCO's exception. (R. Doc. 8-1).[8] The LPSC concluded "that the determinations sought by Cox in its Complaint clearly invoke review of the LPSC and utilization of the Commission's ratemaking expertise and function." (R. Doc. 8-1 at 6).

On September 27, 2013, Cox filed a Supplemental Complaint before the LPSC seeking a declaration that DEMCO's demand for payment of $895,982.10 for tree-trimming and right-of-way maintenance costs violated the Commission's Rate Freeze Order. (R. Doc. 19-3).[9]

## II. Arguments of the Parties

Cox raises three interlocking arguments in support of its motion. The first two arguments are grounded on Cox's assertion that the LPSC's authority is plenary with regard to utility rates and pole attachment agreements in Louisiana. Cox seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the ground the Contract and "other rates, terms, and conditions of attachment at the heart of" DEMCO's claims are within the LPSC's exclusive jurisdiction. (R. Doc. 5 at 1). Cox argues that each of DEMCO's claims involves issues requiring the LPSC's exclusive determination as they involve the "rates, terms, conditions" of a pole attachment agreement and violate the LPSC's Rate Freeze Order. (R. Doc. 5-1 at 17-22). If the court should conclude that the LPSC does not have exclusive jurisdiction,

---

[6] LPSC Docket No. U-32285, DEMCO's Exception for Lack of Subject Matter Jurisdiction (Apr. 12, 2013).
[7] LPSC Docket No. U-32285, Cox's Response in Opposition to DEMCO's Exception for Lack of Subject Matter Jurisdiction (May 10, 2013) and LPSC Staff's Response in Opposition to DEMCO's Exception for Lack of Subject Matter Jurisdiction (May 24, 2013).
[8] LPSC Docket No. U-32285, Ruling on Exception for Lack of Subject Matter Jurisdiction (Aug. 2, 2013).
[9] LPSC Docket No. U-32285, Supplemental Pole Attachment Complaint with Requests for Declaratory and Injunctive Relief (Sept. 27, 2013).

Cox argues that the court should nevertheless dismiss or stay the action under the doctrine of primary jurisdiction, a jurisprudential doctrine which allows the court to defer to the LPSC's special knowledge and expertise in the subject matter. (R. Doc. 5-1 at 22-25).

In opposition, DEMCO argues that the LPSC does not have exclusive jurisdiction over this action because of the nature of the claims alleged (breach of contract) and the remedy sought (money damages).[10] (R. Doc. 16 at 7-13). DEMCO argues that the LPSC lacks any jurisdiction over its claims and the courts have exclusive jurisdiction. DEMCO asserts two arguments with regard to the application of the primary jurisdiction doctrine. First, DEMCO argues that the doctrine does not apply in this case because the LPSC lacks even concurrent jurisdiction over its breach of contract claims. (R. Doc. 16 at 15). Second, DEMCO argues that even if the LPSC has concurrent jurisdiction, a stay or dismissal would not be warranted under the primary jurisdiction doctrine because adjudication of this action does not invoke the LPSC's special knowledge or expertise. (R. Doc. 16 at 15-19).

As an independent third ground for dismissal, Cox argues that DEMCO's claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this request, Cox argues that the Rate Freeze Order precludes DEMCO from recovering on its claims. Cox also argues that DEMCO's claims for back rent and penalties are time-barred under an LPSC limitations period. Cox raises various other interpretative and factual arguments regarding whether DEMCO has satisfied conditions under the Contract. In response, DEMCO argues that LPSC's Rate Freeze Order and limitations period are inapplicable in this case, and that Cox's Rule 12(b)(6) motion improperly raises factual issues and interpretative claims that are to be determined at a later point in the proceedings.

---

[10] DEMCO's request for additional bond seeks specific performance under the Contract.

### III. Law & Analysis

#### A. Motion to Dismiss under Rule 12(b)(1)

Despite having invoked this court's subject matter jurisdiction over the instant action by removing it from state court, Cox is now arguing that this court lacks subject matter jurisdiction because the LPSC has exclusive jurisdiction over this action. Under Rule 12(b)(1), the district court may dismiss the action based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id*.

The Louisiana Constitution grants the LPSC power to regulate all "public utilities and have such other regulatory power as provided by law." La Const. Art. IV, § 21(B). By statute, the LPSC has the duty and authority to "exercise all necessary power and authority over any street railway, gas, electric light, heat, power, waterworks, or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities." La. Rev. Stat. § 45:1163. The Louisiana Supreme Court has explained that the LPSC "has the exclusive authority to regulate all public utilities and adopt and enforce reasonable rates, regulations, and procedures necessary to discharge its duties." *See Opelousas Trust Auth. v. Cleco Corp.*, 105 So. 3d 26, 37 (La. 2012) (citing La. Const. art. IV § 21(B)).

Neither the Louisiana Constitution nor the Louisiana statutes, however, directly provide the LPSC with power to regulate pole attachment agreements. In 1978, Congress passed the Federal Pole Attachment Act, which granted the FCC authority to "regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable." 47 U.S.C. § 224(b)(1). Congress authorized individual states to opt out of the FCC's jurisdiction where they agreed to regulate pole attachments themselves. 47 U.S.C. § 224(c). The same year the Federal Pole Attachment Act passed, the LPSC certified to the FCC its authority to regulate pole attachment agreements. *La. Cablevision v. Louisiana Pub. Serv. Comm'n*, 493 So.2d 555, 558 (La. 1986). In a General Order issued in 1984, the LPSC asserted that interested parties may file a complaint before it "for the purpose of determining the rates, terms and conditions" of a pole attachment agreement. (R. Doc. 6-4).[11]

The Louisiana Supreme Court did not address the scope of the LPSC's power to regulate until 1986. After the LPSC adopted a formula resulting in substantially higher pole attachment rates than the FCC, cable television operators filed suit seeking a declaratory judgment that the LPSC lacked authority under Louisiana law to regulate pole attachment agreements. *La. Cablevision*, 493 So.2d at 558. The Court noted that although "Louisiana law provides no express authority to the Commission to regulate the rates, terms, and conditions of pole attachment agreements," the LPSC has been "given broad regulatory powers in both the Louisiana Constitution and statutes." *Id*. at 558. The Court concluded that the LPSC's regulatory power includes "the authority to regulate the rates, terms, and conditions of pole attachment agreements between cable television operators and the Commission-regulated public utilities." *Id*. at 557-58.

---

[11] LPSC General Order, *In re Rules and Regulations Implementing Regulatory Authority Over Pole Attachments* (Dec. 17, 1984).

9

The LPSC's power to regulate pole attachment agreements, however, does not extend to the relief sought by DEMCO in this action. The LPSC lacks the authority to issue a judgment awarding money damages in a breach of contract action. *See Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So.2d 475, 489 (La. 1991) (Dennis, J. *concurring*) ("[M]onetary damages are within the exclusive original jurisdiction of Louisiana's courts"); *Gulf States Utilities Co. v. Delcambre Telephone Co.*, 527 So.2d 45, 46 (La. App. 3 Cir. 1988) ("As public utilities, Delcambre Telephone and Gulf States fall under the broad regulatory authority of the Public Service Commission. However, this regulatory authority does not extend to the granting of money judgments. Gulf States seeks a money judgment for damages, something the Public Service Commission is powerless to render."); *Central Louisiana Elec. Co. v. Pointe Coupee Elec. Membership Corp.*, 182 So.2d 752, 758 (La. App. 1 Cir. 1966) ("The Louisiana Public Service Commission has no authority to render a money judgment for damages. That is within the jurisdiction of the district courts.").

Even more generally, the Louisiana Supreme Court has stated that contract disputes are within the province of the courts, not the LPSC. *See Central Louisiana Electric Co., Inc. v. La. Pub. Serv. Comm'n*, 601 So.2d 1383, 1386 (La. 1992) ("[T]he PSC has constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities. The Legislature has never "provided by law" for the PSC to exercise jurisdiction over other subject matters and areas of litigation in which public utilities are involved, such as tort actions and contract disputes."). Similarly, the LPSC itself has issued orders providing that it does not have jurisdiction over contract disputes. *See* (R. Doc. 16-5 at 1-2)[12] ("[I]f there exists a valid and binding contract between the parties,

---

[12] LPSC Order No. 5435, *J.D. Harris v. Geo. W. Garif Transfer, Inc.*, *In re: Transfer of Certificate No. 297-A from the former to the latter* (Sept. 6, 1950).

10

such contract is enforceable only in a court of competent jurisdiction, and not before this Commission."); (R. Doc. 16-5 at 3-4)[13] ("[I]t is not within the province of [the] Commission to adjudicate the dispute between two parties to the agreement, and if there has been a breach of contract, the recourse of the injured party is to the courts.").

Through its Petition, DEMCO asserts a claim for damages resulting from a breach of contract, and requests monetary damages as a form of relief.  Under Louisiana law, a party to a contract is "liable for the damages caused by his failure to perform a conventional obligation."  La. C.C. art. 1994.  As DEMCO alleges that Cox has failed to pay money owed under the pole attachment agreement, this is a breach of contract action.  *See Occidental Chem. Corp. v. Louisiana Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 416 (M.D. La. 2007) (citing *Whitney Nat'l Bank of New Orleans v. Poydras*, 557 So.2d 422, 425-26 (La. App. 1990)).  This is not a "rate" case in which DEMCO is actually seeking to modify rates set by the LPSC but has styled its petition and seeking breach of contract damages to avoid the LPSC's jurisdiction.  *See*, *e.g.*, *Opelousas Trust Auth. v. Cleco Corp.*, 105 So.3d 26 (La. 2012) (class action suit brought by rate-payers characterized as a breach of contract claim claiming overcharged due to manipulated fuel adjustment charges was really a "rate" case under the LPSC's exclusive jurisdiction because it challenged the LPSC-approved rate."); *Daily Advertiser v. Trans-LA*, 612 So.2d 7 (La. 1993) (same).  This is a breach of contract action between two sophisticated parties.  Regulations promulgated by the LPSC may be relevant in defining the scope of any contractual rights or duties within a pole attachment agreement, but the LPSC's ability to regulate does not foreclose the court's authority to adjudicate.

---

[13] LPSC Order 5451, *Haynes v. Trahan, In re: Cancelation of lease agreement, as set forth therein* (Sept. 6, 1950).

This court's conclusion in *DEMCO v. AT&T, et al.*, No. 12-078, 2013 WL 150379 (M.D. La. 2013) is instructive. In that case, DEMCO argued that Bellsouth failed to pay the appropriate annual rental fee to DEMCO for its pole attachments. DEMCO's petition included claims for fraud and violation of the Louisiana Unfair Trade Practices Act. The court acknowledged that the Louisiana Supreme Court has held that the LPSC has the authority to regulate "rates, terms, and conditions." The court distinguished *Louisiana Cablevision*, however, concluding that the case did not involve a dispute about the "appropriate rental fee"—an issue to be determined by the LPSC—but instead sought back rent based on that appropriate rental fee. Similarly, this action requires the court to decide whether a breach occurred and to apply the provisions governing any such breach as agreed to by the parties in the Contract.

For the foregoing reasons, this court does not lack subject-matter jurisdiction over DEMCO's claims for breach of contract. In other words, according to the Louisiana courts, the LPSC does not have jurisdiction, much less exclusive jurisdiction, over breach of contract claims in which the party seeks monetary damages. This court has jurisdiction over DEMCO's claims. *See* 28 U.S.C. § 1332.

For the foregoing reasons, Cox's motion to dismiss under Rule 12(b)(1) should be **DENIED**.

B.     **Motion to Stay under Louisiana's Doctrine of Primary Jurisdiction**

In the alternative to dismissal for lack of subject matter jurisdiction, Cox requests the court to stay the proceeding under Louisiana's doctrine of primary jurisdiction.[14] Under the doctrine of primary jurisdiction, Louisiana trial courts have the discretion to defer to state agencies issues that fall within the state agencies' particular experience. *Mills v. Davis Oil Co.,* 11 F.3d 1298, 1304 (5th Cir. 1994). Louisiana's primary jurisdiction is substantive, and must be applied by district courts in diversity actions as if they were Louisiana state courts. *Id.* "The two major considerations underlying the doctrine are the need for uniformity in various areas of regulated industry, and special administrative expertise attributable to agencies due to their intimate working associations with industries they regulate." *Id.* (*citing South-West Utilities v. S. Cent. Bell Tel.,* 339 So.2d 425 (La. 1976)); *Central Louisiana Elec. Co. v. Louisiana Pub. Serv. Com'n*, 601 So. 2d 1383 (La. 1992) (Lemmon, concurring) ("Primary jurisdiction may be appropriately used to refer specific issues to an administrative agency charged with particular regulatory duties when such reference would secure uniformity and consistency in the regulation of business entrusted to the agency or when the limited functions of judicial review would be more rationally exercised by preliminary resort to the specialized agency for ascertaining and interpreting the circumstances underlying the legal issues, particularly when technical questions of fact uniquely within the expertise and experience of the agency are involved."). It is within the sound discretion of the trial court to determine whether to defer to an administrative agency for an initial decision on matters within the expertise of the agency. *Am. Honda Motor Co., Inc. v. Premier Quality Imports, LLC*, No. 04-1205, 2005 WL 2036685, *8 (E.D. La. Aug. 10, 2005) (citing *Magnolia Coal Terminal v. Phillips Oil Co.,* 576 So.2d 475, 489 (La. 1991)).

---

[14] Cox's request for dismissal under the primary jurisdiction doctrine is premised on its argument that this court lacks jurisdiction and the LPSC has exclusive jurisdiction over this action. As discussed above, the

13

The court must first address DEMCO's argument that the primary jurisdiction doctrine does not apply because the LPSC does not have concurrent jurisdiction over DEMCO's claims. As discussed above, DEMCO is correct that Louisiana courts have determined that the LPSC lacks the power to award the remedy of monetary damages sought by DEMCO in this action. Although the LPSC cannot award monetary damages, it has the authority to regulate, and therefore analyze, whether the rates, terms, and conditions of a pole attachment contract are just and reasonable. The court will, therefore, consider whether to exercise its discretion in deferring to the LPSC to decide some or all of the issues underlying the instant action.

The court finds guidance from its decision in *Occidental Chemical Corp. v. LPSC*, 494 F. Supp. 2d 401 (M.D. La. 2007). In *Occidental*, the plaintiffs were power-supply companies that contracted to sell their power to Entergy. Entergy modified its methodology for calculating certain costs and sought to enter into a stipulated agreement with several power-supplying companies, including the plaintiffs. The plaintiffs objected to the stipulated agreement, as the stipulated agreement would result in the plaintiffs recovering less than they were entitled to recover under their contracts. Despite the plaintiffs' objections, the LPSC authorized the stipulated agreement. The plaintiffs did not appeal the LPSC's decision to the appropriate Louisiana court. Instead, they filed a breach of contract action in this court. The court refused to apply the doctrine of primary jurisdiction to the breach of contract action before it:

> The doctrine of primary jurisdiction . . . is only a *prudential* doctrine under which a court is permitted, but not required, to defer to a government agency when (1) the agency has concurrent jurisdiction over an issue, and (2) the court desires to defer to the agency's special expertise. At issue in this case are contract claims. Contract claims do not require the resolution of predicate factual issues within the LPSC's special expertise. This court, and not

---

court has subject matter jurisdiction over DEMCO's breach of contract claims. Cox has not argued that any abstention doctrine applies under which the court should dismiss this action in deference to the LPSC. The court will analyze Louisiana's doctrine of primary jurisdiction for the sole purpose of determining whether the court should stay the proceedings in light of the earlier-filed proceeding by Cox before the LPSC.

14

the LPSC, has the special expertise with which to interpret contracts, and to determine whether breaches of contract occurred. Accordingly, at this time, without the aid of any evidence, the court does not find the doctrine of primary jurisdiction to be applicable.

*Id*. at 415.  Similarly, other courts have refused to apply the doctrine of primary jurisdiction where the relevant state agency did not have special expertise required to evaluate the contract or tort claims at issue.  *See*, *e.g.*, *Magnolia Coal Terminal v. Phillips Oil*., 576 So.2d 475, 489 (La. 1991) (did not apply primary jurisdiction doctrine in mineral lease dispute); *Brownell Land Co. LLC v. Apache Corp*, 2005 WL 3543772 (E.D. La. 2005) (did not apply primary jurisdiction doctrine in contamination action concerning oil and gas exploration).

Cox argues that *Occidental Chemical* is distinguishable because in this action there is a related pre-existing action before the LPSC and the LPSC has ruled that it has subject matter jurisdiction over that action.  (R. Doc. 21 at 11 n.10).  The Complaint filed by Cox before the LPSC, as amended, seeks declaratory relief regarding the reasonableness of various terms and conditions in the Contract, as well as DEMCO's methodologies for conducting and implementing its pole counts, safety audit, and rights-of-way maintenance.  That the LPSC asserts jurisdiction over Cox's action, which does not seek monetary damages, does not necessarily mean that this court must exercise its discretion and apply the primary jurisdiction doctrine.

Although this action raises concerns of comity, judicial efficiency, and possible inconsistent results because a somewhat parallel proceeding is taking place before the LPSC, those concerns do not override the court's conclusion that it is more than capable of handling the breach of contract issues presented in this action.  The court is not satisfied that adjudication of these issues requires deference to the LPSC's special knowledge or expertise.  The court can

15

determine the meanings of terms and conditions within the contract and resolve the underpinning factual issues. If necessary, the parties can seek to enter the opinions of expert witnesses.

For the foregoing reasons, Cox's request to stay the action under the doctrine of primary jurisdiction should be **DENIED**.

### C. Motion to Dismiss under Rule 12(b)(6)

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996); *Benton v. United States,* 960 F.2d 19, 21 (5th Cir. 1992). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore, copies of written instruments that are exhibits to a pleading, such as the Contract at issue in this matter, are part of the pleading for all purposes. *See* Fed. R. Civ. P. 10(c).

Cox argues that the LPSC's Rate Freeze Order precludes DEMCO from recovering any of the monetary damages it seeks—including those related to back rent and penalties, costs for right of way maintenance, and costs related to DEMCO's attachment count and safety audit. LPSC's Rate Freeze Order freezes the contractual or LPSC-approved pole rental rates in effect at the date of the Order. It allows "additional charges" to be made for pole attachments "where agreed to by the parties." In this action, DEMCO seeks back rent for $10 per pole, the amount

allowed by the Rate Freeze Order as it was the amount agreed to by the parties prior to the date of the Order.[15] DEMCO also seeks "additional charges" as contracted for in the agreements, which are expressly allowed by the Rate Freeze Order.[16] The Rate Freeze Order does not preclude DEMCO from seeking the relief it is requesting.

Cox makes two additional arguments regarding why DEMCO has failed to state a claim for back rent and unauthorized attachment penalties. First, Cox argues that these claims are barred by a six-month statute of limitations set forth by the LPSC. Cox relies upon an April 21, 1993 General Order by the LPSC (R. Doc. 6-8)[17] shortening the period for consumers to bring claims against utility companies before the LPSC regarding billing errors as provided in a July 11, 1975 General Order by the LPSC (R. Doc. 16-7 at 1)[18]. The court need not delve into the parties' arguments regarding interpretation of these General Orders, as they do not apply here. This action is not a consumer billing dispute brought before the LPSC. It is a breach of contract action originally filed in Louisiana state court. Cox has not argued that that the prescriptive period for breach of contract actions under Louisiana law has expired.[19]

Second, Cox raises several arguments regarding whether DEMCO has complied with contractual requirements in seeking unpaid rent and penalties. These arguments raise factual

---

[15] In this proceeding, Cox does not argue that DEMCO has unilaterally sought to increase the per pole rental rate of $10 after the date lifting the "rate freeze" as set by the Rate Freeze Order.

[16] Although the Rate Freeze Order contains language involving the LPSC's authority to regulate the "rates, terms and conditions" of pole attachment agreements, the Rate Freeze Order simply addresses the "rate" of attachment. It does not purport to limit the parties' contractual freedom to impose any additional terms or conditions to their pole attachment agreement or otherwise void such agreements made prior to the Order.

[17] LPSC General Order, *In re: Computer Glitches and Billing Errors* (Apr. 21, 1993).

[18] LPSC General Order, *In re: Collection of Meter, Meter Reading and or Billing Errors by Utilities* (July 11, 1975).

[19] Although not argued by DEMCO, the court notes that contract actions in Louisiana are governed by a ten year prescriptive period. *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citing La. C.C. art. 3499). For breach of contract actions, the prescriptive period begins "to run from the time of breach or the time the cause of action arises." *Id.* (citing *Donald G. Lambert Contractor, Inc. v. Parish of Jefferson,* 700 So.2d 894, 897 (La. Ct. App. 1997)). A review of the petition suggests that the 10-year prescriptive period has not run and Cox has not raised arguments to the contrary.

issues that go beyond the pleadings.  DEMCO alleges that unless Cox can prove that the date of attachment of any "unauthorized" attachments, DEMCO is entitled to back rent to the date of the execution of the Contract.  Furthermore, DEMCO alleges that it seeks penalties prospectively from the time it put Cox on notice of the alleged unreported, unpaid attachments in 2011.  That the Contract contemplates rental payments on an annual basis does not necessarily preclude DEMCO from seeking recovery for missed or unauthorized payments.  DEMCO's interpretations of the Contract are plausible.[20]  Furthermore, Cox's arguments that DEMCO has failed to comply with the notification requirements in the Contract is a factual dispute that goes beyond the pleadings.  Taking its allegations as true, as the court must, DEMCO has stated a claim for relief that it is entitled to unpaid rent and penalties for unauthorized attachments under the Contract.

Cox also argues that DEMCO's claims for an increased bond under the contract, reimbursement for expended costs on maintaining its rights-of-way, and reimbursement of its costs associated with its safety audit fail to raise viable claims.  Cox's arguments go to factual issues—such as the methodology of DEMCO's pole inventory—as well as conflicting interpretations of the contract language—such as how maintenance and safety audits would proceed and costs would be allocated.  DEMCO's claims to these forms of relief are plausible on the face of the Complaint and the Contract.  DEMCO has pled facts, which taken as true, raise its claims to relief above a speculative level.  Similarly, DEMCO's claims for attorneys' fees and costs are plausible claims considering the plain language of Section 10 of the Contract.

For the foregoing reasons, Cox's motion to dismiss under Rule 12(b)(6) should be **DENIED**.

---

[20] The Court need not decide now whether DEMCO's interpretations of the contract are ultimately correct.

## **RECOMMENDATION**

For the foregoing reasons, it is the recommendation of the magistrate judge that Cox's Motion to Dismiss or, In the Alternative, Motion for Stay (R. Doc. 5) be **DENIED**. The Court will re-visit the issue of complete diversity, if necessary, upon amendment of the Notice of Removal setting forth DEMCO's place of incorporation and principal place of business.

Signed in Baton Rouge, Louisiana, on February 14, 2014.

                                        **RICHARD L. BOURGEOIS, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**